We are ready when you are May it please this honorable court My name is William Pratt DeMond and I proudly represent Dr. Joseph Zadeh and patient Jane Doe The district court in this case clearly erred when it ignored the United States Supreme Court's jurisprudence in C.V. Seattle which clearly and unequivocally prohibited agents of government from serving, executing, and enforcing their demands for inspection of the field via administrative subpoenas It also erred when it dismissed plaintiff's claims based upon the enforcement, execution, and to conduct warrantless pretextual criminal raids in reliance upon this honorable court's jurisprudence in Beck and finally it erred when it found the defendant's conduct was reasonable despite their designed deprivation of the people's clearly established right to pre-compliance review and the per se unreasonableness thereof as a matter of law In this case there is no Texas statute let alone any statute cited by the Texas Medical Board which authorizes the execution of subpoenas in stanza upon suspected pain management clinics Additionally there is no statute which limits the officer's discretion, time, place, or scope and there is no statute which advises the people that these searches are conducted pursuant to law As a result the statutory scheme to the extent that it exists at all fails to satisfy the United States Supreme Court decision in Berger Let me ask you, does anybody dispute that the doctor's secretary was told that if the search was delayed it could result in his loss of his license to practice medicine? Is that a disputed issue of fact or did it get to that point? Defendant Pease acknowledges that she may have said something like that but I believe that she does not recall actually saying it. But she didn't deny it? I believe that is correct your honor, I can find the record citation for you promptly. Now we just recently had, I mean just over the weekend I think, an opinion, unpublished opinion, I don't know whether it's accessible to you, dealing essentially with these facts didn't Cotropia is directly on point and very relevant in many respects. And tell me how that works in your favor, because it is limited to some extent to hold it. Yes your honor. In Cotropia the court found that, reiterated that the people are entitled to pre-compliance review and that warrantless inspections, warrantless searches are per se unreasonable absent limited exceptions. None of those exceptions are present here, therefore the search was per se unreasonable as a matter of law. Cotropia also specifically found that the search is required to review before a neutral and impartial magistrate, which were not present in this case. It also cited directly to CV Seattle, which says that these demands for inspection cannot be enforced by agents in the field. So in that sense, all those issues line up directly. Well the panel said that only an oral argument as we're having today, did the medical board come up with the issue of closely regulated industry and so it did not address that. So it seems to me, first Cotropia is not precedent unpublished, but it is certainly a persuasive opinion to be considering. But secondly, it does seem to me the medical board has focused considerably on closely regulated burger issue in front of us today. It may be that that's what this turns on, whether it's a closely regulated area or not, at least it was not clearly established one way or the other. So why don't you deal with that? Yes, Your Honor. In this case, it was in fact clearly established that this industry was not closely regulated in part because there was no decision holding that it was closely regulated. Hang on just a second. When I'm speaking in here, I'm not a very loud speaker. It's not coming out on his speaker and Judge Sholley's not hearing me. Is that something we can adjust up here? It's probably me. Stop his time for a second. Go ahead. With respect to the closely regulated industry exception, Your Honor, there is no case holding that the medical industry is closely regulated industry. There are expectations of privacy which are controlling under the United States Supreme Court jurisprudence. The closely regulated industry exception is in fact an exception which the Supreme Court has cautioned not be utilized to swallow the rule. Here, there is no statutory scheme, much less any statutory scheme which satisfies the requisites of burger. There is no scheme which provides the people with notice that these searches are being conducted under the rule of law. Isn't this case fairly similar to Beck dealing with Board of Dental Examiners? No, Your Honor. And as the panel noted in Katropia, the court in Beck was specifically dealing with a Texas statute which authorized this conduct, that is the Texas Controlled Substances Act. In this case, just as in Katropia, there is no comparable statute. In fact, the district court below found that the two statutes cited by the Texas Medical Board for their authority did not go into the building. Furthermore, Beck is further distinguished because there, the court found that the government did not exceed the scope of their authority. Here, on appeal, the Texas Medical Board has conceded to seizing medical record, sign-in sheets which were outside the scope of the language's request or the subpoena's request. And finally, in Beck concerned a dental office. Dentists contain controlled substances on their premises to practice their profession, whereas here there's no evidence that there were such pills at all. Controlled substances are not the same as prescriptions for controlled substances. And finally... To return, not return, before you leave that, you haven't left it yet, so to continue with that, in Beck we said the regulation and monitoring of the use of controlled substances, particularly in the dentistry industry, is of substantial state interest. I don't read Beck as ever saying, maybe it does, that it's a closely regulated industry, but it does go through this burger analysis for purposes of qualified immunity. So it's not just the presence of controlled substances at a dental office, it's the regulation of the prescription and is a vital state interest, whether played out correctly here or not. But it seems to me that's a key issue in where the burger would apply, maybe not closely regulated medical industry, but closely regulated dispensing of medications. So you think the mere absence of the drugs being in the office is somehow relevant? In the prescription, who's getting them, who can go next door, maybe not even next door, in the same building and pick these up with a piece of paper? Isn't that an equal interest, whether the drugs are present in the doctor's office? I don't know if it's an equal interest, Your Honor. However, it is distinguishable, because in this case, the Texas Medical Board has conceded to already having that information at their disposal before they went in, that is, who the prescription is written to. That's on page 31, note 10 of their brief. So in that sense, it is readily distinguishable. But perhaps more importantly, Your Honor, is that the tripartite burger test, the substantial state interest is pronged too, but the third prong is the requirement of a comprehensive regulatory scheme which puts the people on notice that they can be subject to searches at any time, particularly in this industry. And here, no such statute exists, no such limitation on discretion exists, which this Honorable Court has found to be pertinent in cases like Club Retro. Doesn't Judge Pittman agree with that? Didn't he say there was no such clarity? That is correct, Your Honor. Let me add, the one thing that really interests me in this case is the participation of DEA involved in it. And it seems like that they were very, very tight on this, that the investigation started as a result of the message from the DEA that they were ready now to be gotten in the investigation to the point that they needed the help of the agency, they went there together, and a strong principle that you cannot have a warrantless search that is a pretext for a criminal search. And I mean, can you tell me exactly what happened as far as the association of the DEA and this search, how they participated in it? Yes, Your Honor, to the extent that I'm aware of what the record reveals is that the DEA investigator, Penfold, sent an email to the Texas Medical Board saying that she was at the point in the criminal investigation where she needed to interview Dr. Zayden and review his files, and asked if there could be an accompaniment with the Texas Medical Board to review those files. At that point, then the Texas Medical Board internally sent a new email to a group of people within the Texas Medical Board saying this was a priority one and it needed to be issued with no notice on an expedited basis. That then proceeded. Then when the Texas Medical Board showed up at Dr. Zayden's medical clinic, the DEA was with them, but no one identified the DEA was present, no one said that there was a criminal investigation being conducted, no one mentioned anything to that effect. Did the DEA see exactly what the board agents saw? That is subject to some speculation, but the United States government in the Northern District case with Dr. Zayden did not contest the fact that the United States had seen that the DEA agents had seen those records. There is further evidence from Dr. Zayden's medical assistants that they did in fact see those records. All right, and then shortly thereafter, according to the case, is that correct? Got a subpoena, I believe, Your Honor. A subpoena. An independent subpoena to subsequently go and review the documents that they had already reviewed. That was with a warrant. A warrant or a subpoena, yes, Your Honor. Effectively a warrant. They had gone to an independent magistrate judge to get approval for what they were going to provide with their accompaniment of the agency to support that warrant? Or do you know? You can consult the counsel as far as I'm concerned. They used a couple of names, Your Honor, but there's no clear indication they used it beyond that. Beyond that, however, they did in fact publish those names online when they filed a document with the district court with the unredacted names of those patients. And did the record show that whether it was customary for the DEA conducting a criminal investigation usually accompanied these people and the board agents with respect to the professional investigation? There is no indication in the record as to whether or not that is their common policy. However, we have seen other cases in which that has been the case. I mean, that does seem to me, I mean, a rather serious impact on the legitimacy of the subpoena that the board was trying to serve at the time. Yes, Your Honor. The Tenth Circuit has addressed a comparable case, United States v. Johnson 994 F. Second 740-743, where it found that the federal agents who participated in the state investigatory search transformed that search into a federal investigative search. I know you say our 2000 decision in Beck is distinguishable, but does that necessarily mean that a reasonable officer couldn't look at how we decided Beck and think his actions here were valid? Yes, Your Honor. An officer could not look at Beck and decide that it was reasonable to do this based upon C.V. Seattle in which the Supreme Court said that officers cannot enforce these subpoenas and requests for administrative inspection in the field, particularly when backed up by Donovan v. Lone Steer and other jurisprudence concerning pre-compliance review. This is a pretextual criminal raid without a warrant that was conducted in connection with the DEA, and Beck does not provide them any cover of authority to violate C.V. Seattle or Lone Steer. Well, the City of Seattle is a 1967 case, is it not? Yes, Your Honor. And so this court, with all the mistakes it can make, well after C.V. Seattle said what it said. And so an agent is supposed to go through the legal analysis to say that the court badly erred? No, Your Honor. They have legal counsel to do that for them. Legal counsel has to go through the Fifth Circuit opinion and say we badly erred. And so it doesn't create a good faith qualified immunity rule. I don't think that anybody has ever suggested that the Fifth Circuit is capable of overturning the United States Supreme Court decision in C. And you're saying that we did it in Beck? I, to the extent that the court did so, did it in error, but I am not prepared to say that simply because I believe Beck. We can take it, if that's what you think. I believe Beck is readily distinguishable, Your Honor. Because, as Katropia found, that case was conducted pursuant to the Texas Controlled Substances Act, and here there is no comparable statute, and the statutes that the Texas Medical Board cited to were found by the District Court to not authorize these inspections. All right. Thank you, counsel. Thank you, Your Honor. Tell me where I am missing somehow that this search was not pretextual, given all of the facts that we know about. So, Your Honor, there are a couple of responses to that. First, the record reflects at, if you look at 1530, the DEA obviously went with the Medical Board investigators, as is a common practice. It was not pretextual because there was a complaint. If you look at the record at 1521, 1524, you'll see that a complaint was filed with the Medical Board. Yes, it was filed by the DEA, but what that complaint does is it triggers the Medical Board's processes for opening an administrative investigation under the regulatory scheme in Texas. I mean, that does not exonerate the Board from its close participation in the investigation with someone who is doing a criminal investigation. I mean, it just seems, I mean, it may be a joint purpose. That's certainly correct, Your Honor, and under this Court's precedence in Beck and Thomas, and even more importantly under the Supreme Court's precedent in Villamontes Marquez, that is totally acceptable. I don't know about that. I mean, I'm really concerned about the fact that the DEA effectively went in there without a warrant for the purpose of trying to substantiate their criminal investigation of this doctor, and that you were complicit in that by responding to their telephone call that initiated the investigation. And if that doesn't seem like you all are playing hand in glove, and it's... That was not a question. So, Your Honor, again, under the precedence this Court has said in Beck and in Thomas that the criminal suspicion does not transform. I understand that, and that's true enough, but you take the, holding hands with the DEA while you're investigating a warrant on a warrantless search of a doctor's records. Anyway, I won't belabor the point anymore, but, I mean, you certainly haven't satisfied me that it doesn't have some taint of pretext. Well, I understand your concern, Your Honor, I believe, but, again, the courts have said that it's only when that is solely a pretextual basis for, in other words, if the medical board didn't have a legitimate regulatory concern, didn't have an actual... I don't think that's the law. I mean, as I read the cases, I mean, it doesn't have to be, in other words, it doesn't have to be solely a criminal investigation. Well, that was actually taken from the case that appellants cited, the United States v. Thomas out of the Tenth Circuit, but, again, in Villamontes-Marquez, this court said that even though U.S. Customs agents were accompanied by law enforcement officers and were following an informant's tip that the ship was carrying contraband, the search there was constitutional. Furthermore, we observed that administrative searches conducted pursuant to valid statutory schemes do not violate the Constitution simply because of the existence of a specific suspicion of wrongdoing, and that's United States v. Thomas taken from this court's decision in Beck. Let me ask you a bit more about the facts. My understanding is the knowledge of the medical board came or at least was assisted by an e-mail from DEA saying we're far enough along in our investigation, we now hope we can go in with you on this sort of inspection. Is that correct? Yes, Your Honor. So along with that e-mail was the complaint. Right. So it's very much generated by the DEA. Are any of these cases you're talking about, regardless of the general language, have that clear prompting from the criminal investigators as clear as we have in this case? Your Honor, I didn't do a thorough record search on Villamontes-Marquez or United States v. Thomas, but, again, those cases said that there was a specific suspicion of criminal wrongdoing that was brought to the regulatory agency by criminals. But I was just looking to see if this adds an extra ingredient to it. And did the medical board then – the medical board did indeed pursue its investigation and its regulatory function after the search against this doctor? Yes, Your Honor. And that had already been triggered by the complaint being filed. Again, law enforcement shares information with regulatory agencies all the time, and so this is a common practice across – And I guess you read some of the cases, they accompanied them as well. Yes, Your Honor. Any time the DEA wanted to do a warrantless search, especially with respect to these pain pills, I mean, all they've got to do is join the administrative agency in it somehow, and they don't have to go to a mutual magistrate to make a determination as to whether the search could occur. It's just a blank check for a warrantless investigation. So, Your Honor, there are cases, again, that mention if it's a factual determination that's available there and that it was pretextual, that there wasn't a legitimate regulatory concern at issue, then a court could find that. Your Honors, this case is controlled by Beck. It establishes both the lack of a Fourth Amendment violation as well as the reasonableness of the board's actions in this case. So I'll first address the closely controlled issue before turning to the burger factors that constrain the administrative subpoena here. First, the medical profession is a closely controlled industry. This is seen by the multiple factors set forth by the Supreme Court. Now, again, I mean, I'm having trouble kind of slicing and dicing this because it defies common sense, if nothing else, as the district court indicated, that a doctor doesn't have some rights of privacy, and especially combined with the patients. Now, if you say that the pain industry and the drug industry as it relates to pain and the medical practice as it relates to those drugs is closely regulated, that's supportable. But just to say that the medical profession itself does not enjoy some right of privacy, to me, is incorrect. Your Honor, we would agree with you and did in our brief that there, of course, are privacy concerns always when the medical field is involved. But then the question is, in any Fourth Amendment case, the touchstone is reasonableness. And so that becomes a question of what is reasonable for, in this instance, the board to have access to. If you look at the history of, in Texas, for instance, the statute that we've cited there goes back to 1925 where the board has been able to ask for records from doctors. And so this is a long history of that taking place. And so getting to your question about privacy, though, it matters, again, who is getting the information, which is precisely why the federal guidelines, the federal law in HIPAA, specifically exempts the board from its otherwise very stringent privacy requirements. And all of this ties into the argument that they make as well, and that is that the regulatory scheme here is not properly restricted and limited because it allows subpoenas anytime, anywhere, for any purpose. It doesn't restrict the kind of subpoenas that you are allowed to serve. Is that correct or incorrect? That's incorrect, Your Honor. Tell me how it restricts it. That actually goes to the second point when we're looking at the Berger factor. So not only is this closely controlled, there are constraints on this. If you look at the statutory framework, that's where we start. Then a complaint is filed with the board. The board will first see if it has jurisdiction over that complaint. If it does, then it will look to something, in this case, because we're dealing with controlled substances, it will look to what's called the PMP, the Prescription Management Program, which is the FDA's list of which we know is fine under Supreme Court precedent that we track the prescriptions that people have been given for the drugs and controlled substances that they've been given. That information is available to the board. So the board will go to that. They'll look. They'll see if there's a factual predicate to continue with the investigation. Then once that is going to proceed, then the board is further constrained by, again, not just the statutes, but the administrative code, which tells us that this is going to happen in less than 14 days if the urgency of the situation or the possibility that records may be lost, damaged, or destroyed, that there can be, in other words, no notice given. Let me ask you this as well, and that is, if we conclude that under the facts and circumstances of this case, the investigation was pretextual, qualified immunity is inapplicable at that point, is it not? Your Honor, I believe that would be correct. Because you would clearly be on notice that you could not combine a civil investigation with a criminal purpose, however small it may be. Counsel, let me assure you that concessions and oral argument are important. So think through your answer. Well, Your Honor, again, there would have to be no basis, too, for us to believe that we couldn't do that. But, again, I believe that if I understood you, that maybe we understood that it was pretextual. I'm just saying that the board and any reasonable officer, every reasonable officer, would know that you cannot use an administrative process to obtain a warrantless process to obtain information with a criminal or penal purpose. Well, again, Your Honor. Well established. If we find that that is the violation here, there's no qualified immunity. If I understand you, I believe that you'd be attributing us knowledge that we knew it was pretextual. That every reasonable officer would have known, yes. Again, under this Court's precedence in Beck and United States v. Thomas, under the Supreme Court's precedent in De La Monte's Marquez, Your Honor, even though we know that the DEA has an ongoing investigation, they have a suspicion of criminal wrongdoing, that does not alter the evidence. But, there, they did conclude in those cases that it was not pretextual, right? Exactly. In those cases, they said that your search was valid, not pretextual. I'm saying that if we found here that it was pretextual, you would not be entitled to qualified immunity. That's all I'm saying. Your Honor, that may be correct, Your Honor. As the District Court found, there's no basis for that in the record because there was an actual investigation taking place by the Board. Let me ask you what your interest was in this search. As you say in your brief, and you were addressing it a little while ago before we got into this series of questions, the regulatory inspection system established here accomplishes already the providing of certain knowledge to you. Each of these prescriptions is already cataloged with the patient's name and the amount prescribed. And then, in a footnote, you say, even though this information is already available to medical regulating authorities, your subpoena authority are important for determining both whether a doctor is operating a pain management clinic and whether the controlled substances are being prescribed according to law. Are you trying to see if what's being reported is being accurately reported? You couldn't tell by the number of prescriptions and the frequency of the same patients getting it and whatever else, whether it's a pain management clinic. Just tell me what this inspection, this warrantless inspection, gave you that you didn't know from what this part of your brief is talking about. So, Your Honor, the pain management program, the PMP list, just gives us patient names and what they were prescribed. It doesn't speak to either the amount, for instance, that a doctor is prescribing. If a doctor is prescribing controlled substances to more than half of his patients, then he's actually, as Dr. Zada has admitted now on the state side, on the state hearing, he was operating an unlicensed pain management clinic. And so it allows us to basically put two and two together, just that information by itself. Because, again, the board here is investigating doctors. We're not investigating patients. And so we can see that patient list, but we need to be able to put two and two together in order to regulate the physician. Was there a criminal prosecution in this case later? I mean, was the doctor convicted of crime? Not to my knowledge, Your Honor. That would be the DEA's side. Let me ask you about the use of this closely regulated industry. The Katropia case says it wasn't raised until oral argument. I look back at the timing of these two different cases, and it seems to me that the search in this case was 2013. The search in Katropia was in 2015, I think it was. It seems to me latching on to closely regulated industry is a late development, perhaps with the board believing that its authority otherwise being argued here was sufficient, but now we're having doubts. In these two cases, and maybe there are others, how long has this issue of closely regulated industry been raised? When was it first raised in this case? Was it on summary judgment? The district court was looking at that question at the motion to dismiss stage, Your Honor, which is where he found the Fourth Amendment violation. Again, I have read Katropia but don't know. I believe that it was only raised at that point at oral argument, had not been raised. So the motion to dismiss in this case was filed in October 2015. Are you saying in that motion closely regulated industry was already being discussed, or was it not until a year and a half later with summary judgment? In this case it was being discussed at the motion to dismiss stage. Okay. It seems to me that fits in the standard for whether an officer, if we get into qualified immunity, what reasonable officers would have known, what was clearly established. Is that an objective or a subjective test? Do we look at what these officers knew and, indeed, what they may have not known, and it doesn't matter because it's an objective test? What kind of test is this on whether an officer, whether it's clearly established law that affected the, whether all reasonable officers would have known something? I believe that's an objective test, Your Honor. And so it would go, we would look at the state of the law and then speak to what a reasonable person, a reasonable officer, in this case, would have known at the time. Would it be fair to say at the time of each, not each, the only one I'm worried about today is this one, but at the time of this search that the board was not taking the position that this was a closely regulated industry and that you needed that authority? Your Honor, the board has taken the position for some time. Well, Katropia is my only evidence to the contrary, and it's just an odd situation that just two weeks ago, no, six weeks ago, I guess it was, an opinion was handed down saying that's not what the board had been arguing. Well, Your Honor, they had not raised the deep level of detail that we have in this case and actually others that are now in the pipeline. They had more heavily relied on just the fact that these were reasonable actions in light of Beck didn't get into the weeds on the closely controlled and the Berger factors, those issues. And so there, it was almost a who had the burden of proof in Katropia. If you read that, and this court found that the board bore the burden of proof in more affirmatively setting forth that evidence or that argumentation ahead of time. The board . . . The little time that you have left, you have both the Katropia panel against you and Judge Pittman against you on your general regulatory authority, and we'll have to look at that independently because we don't have any precedent. But it does seem to me that Berger may be your best bet here. Is there any case that it seems to be a bit much to be asking this court for the first time to hold that this is a closely regulated industry, the medical practice per se? Well, Your Honor, I mean, two things. One is that this court has, again, following its normal factors, done that with the dental profession, the pharmaceutical industry. I don't think it held that. Pardon? I don't think it actually held that in dental examiners, but it certainly went through the analysis. I don't think it's ever holding to that effect. That's correct, Your Honor. It treated the dental profession as a closely controlled industry. The medical profession is more closely controlled than any of these as we set forth in our brief. But, I mean, I thought that that is tied to the no expectation of privacy. In other words, you get engaged in the medical practice, and it's closely related because you're on notice that you have no right of privacy, and that just does not jibe with the facts. Well, Your Honor, again, in this case, we have the HIPAA guidelines, we have the DEA PMP list, we have these other indicators. Go ahead and finish your answer. That would tell us that, in addition to the statutory framework, including, I mean, just look at Texas Occupation Code 154.053, which informs doctors that notice will not be given. Is the law practice a closely regulated industry? No, it's not, Your Honor. Because we get to decide. And it doesn't meet the factors that this court has. Well, I mean, but, you know, they control a lot of things that the lawyers do. There's no dangerous element, Your Honor. Well, I mean, some people are going about that. I think we're going a little far field here. Thank you, counsel. Not in the question, just in the answer. Your Honor, in the response, I heard counsel say that Dr. Zeta admitted to running an unlicensed pain management clinic, so that is incorrect. He made no such admission. There's certainly no admission to that affecting the record. Regardless, it's incorrect. Judge Jolly observed that this was an investigation of the doctor. It goes even further than that, Your Honor, because the United States government admitted that this was actually an investigation not only of the doctor, but also of the patient. That is in the record. With respect to the closely regulated industry, it is clear that both doctors and patients have the right to privacy and the expectations of privacy. And those privacy considerations fit into the Patel framework of the United States Supreme Court saying that where there is no expectation of privacy, then those industries are closely regulated. Because there is that expectation here, there can be no closely regulated industry as a matter of law, which would therefore make their conduct unreasonable as a matter of law because they had no reason to believe that it was a closely regulated industry because they concede that there were, in fact, privacy interests. Additionally... But if you slice it and dice it, as I say, to pain medication and pain doctors, you have a different conclusion, perhaps. That is that it is closely regulated and there is a substantial governmental interest in it and so on. I'm not prepared to dispute the presence of a significant governmental interest in this case, Your Honor. However, it is the third part of the Berger test which is not satisfied. There is no constitutionally adequate substitute for a search warrant. And in the Supreme Court jurisprudence concerning the closely regulated industries, the Collin-Odd case talks about how where there is a privacy interest, excuse me, Donovan, where there is a privacy interest that only courts can decide, I beg your pardon, that's Camara, that where there are searches that intrude upon the right of privacy, that must be decided by a magistrate, not by the executive branch. 387 U.S. 523 and 529. Furthermore... Counsel, let me ask you, and you can make your answer very brief. The amicus brief, does it add anything in this case that we ought to be considering? None of you are seemingly embracing a lot of what's in the amicus brief. No, they certainly have a Second Amendment consideration. The Second Amendment is what I'm talking about. We don't need to get into that from anybody's viewpoint, it seems to me? Well, I believe it speaks for itself, Your Honor. I have no independent information that this is in fact a practice in the medical profession, that doctors are being encouraged to ask about guns in the home. However, I also have no reason to disbelieve that that is in fact the case, and therefore I believe the interest is in fact a valid one that must be considered. Well, anything that might help you, you want us to consider. I understand. Yes, Your Honor. Keep going. There was a quick conversation about restrictions. Neither Robinson nor Pease were able to identify any limitations on that authority whatsoever. That deposition testimony is in the record. And further, there is no restriction upon the breadth of documents that can be seized via these subpoenas, including information that has nothing to do with drug use, as evidenced by their admission they seized cyanide sheets, which were outside the scope of the subpoena and had absolutely nothing to do with the use of controlled substances or prescriptions whatsoever. Furthermore, there was a conversation about loss, damage, or destroy. In Katropia, this Honorable Court found that there was no particularized showing that the documents in question could be lost, damaged, or destroyed. Here, there is similarly no such showing. In fact, the Texas Medical Board defendants have admitted or testified that all documents in all cases can be lost, damaged, or destroyed, thereby eliminating the possibility of a particularized showing because they treat all cases the same way. Further, the joint purpose that was identified, this is the excessive entanglement with law enforcement, with plaintiffs, appellants, both specifically pled and briefed. And finally, with respect to the Marquez case, which was identified, that case involved admiralty law, a moving vessel comparable to a car with lessened expectations of privacy, and no indication the tip came from law enforcement in any way whatsoever. Those three factors make it readily distinguishable from the case at bar. All right, Counsel. Anything else? You can give us 50 seconds back if you want to. I'll do so now. Don't feel pressured about it. Well, thank you both for your presentation today. An important case, and we will take it under advisement. We are in recess.